**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ASCOM HASLER MAILING SYSTEMS, INC.,** | |
| **Plaintiff,** | **Civil Action No. 00-1401 (PLF/JMF)** |
| **v.** | |
| **UNITED STATES POSTAL SERVICE,** | |
| **Defendant.** | |
| **NEOPOST, INC.,** | |
| **Plaintiff,** | **Civil Action No. 00-2089 (PLF/JMF)** |
| **v.** | |
| **UNITED STATES POSTAL SERVICE,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

These consolidated cases were referred to me for all pre-trial matters, including for the

purpose of issuing reports and recommendations on any dispositive motions filed in these cases.

Pending before me and ready for resolution is <u>Defendant's Motion to Recuse Magistrate Judge</u>

[#152] ("Def. Mot.").[1]  For the reasons stated herein, defendant's motion will be denied.

**I. Background**

The long history of this case is necessary to understand the United States Postal Service's

---

[1] Also pending before me is plaintiff's <u>Consent Motion for Expedited Ruling on Motion to Recuse and Motion to Set a Hearing Date for Dispositive Motions</u> [#177], which will be granted in part and denied in part in the accompanying Order.

("USPS") pending motion.

The USPS has plenary power over the "amount of postage" and "the manner in which it is to be paid." 39 U.S.C. §§ 404(a) and (4).[2]  It is also authorized "to provide and sell postage stamps." Id.  In the 1960s, Pitney Bowes invented and patented the Computerized Remote Meter Resetting System ("CMRS"), which it marketed under the trade name "Postage by Phone."  See Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv., Nos. 00-CIV-1401 and 00-CIV-2089, 2007 WL 724896, at *1-2 (D.D.C. Mar. 6, 2007) (citing Pitney Bowes, Inc. v. U.S. Postal Serv., 27 F. Supp. 2d 15, 17-18 (D.D.C. 1998)).  The system allowed customers to purchase additional postage by phone. Id.  Pitney Bowes entered into a Statement of Understanding ("SOU") in 1978 with the USPS that allowed Pitney Bowes to operate the new system. Id.  Other postage meter companies, known as resetting companies, including plaintiffs, were also authorized to use CMRS. Id.

To operate, regulations require CMRS customers to advance payments for postage. Id. Before 1995, CMRS customers made the payments to the resetting companies, which transferred the payments to the USPS once the customers had used the postage. Id.  The resetting companies held the customers' funds in banks, where the funds collected interest until they were transferred to the USPS. Id.  The resetting companies retained control over the interest. Id.  In 1995, the USPS passed regulations that no longer allowed customers to route their funds through the resetting companies, but instead required them to make the advance payments directly to the USPS.  See 39 C.F.R. § 501.15.  The resetting companies no longer retained control over the

---

[2] All references to the United States Code and Code of Federal Regulations are to the electronic versions in Westlaw or Lexis.

interest made from these advance payments, and Pitney Bowes filed suit against the USPS for various claims, including unjust enrichment and constitutional taking.  See Pitney Bowes, 27 F.Supp.2d at 19.  Before the case went to trial, the USPS and Pitney Bowes settled the case for $51,750,000. Complaint [#1], Ex. A. at 4.  I presided over the complex settlement negotiations.

The USPS did not enter into any settlement agreements with any competitors of Pitney Bowes, including plaintiffs in the instant case.  Plaintiffs brought this case, alleging that: (1) they had contracts, expressed or implied in fact, which provided that they would continue to receive the interest on the trustee accounts and that the USPS breached those contracts when it promulgated the 1995 regulations; (2) they relied to their detriment on the USPS's promise that they would be permitted to keep the interest ("promissory estoppel") and that they are now entitled to it; (3) they are entitled to the interest quantum meruit or to prevent the USPS's unjust enrichment; (4) they were third-party beneficiaries of the 1978 SOU between Pitney Bowes and the USPS; (5) their continued entitlement to the interest was property taken from them without just compensation; and (6) in settling with Pitney Bowes but not plaintiffs, the USPS breached its constitutional obligation to treat similarly situated parties equally.  Ascom Hasler Mailing Sys., Inc., 2007 WL 724896, at *1 -2.  On June 16, 2006, Judge Friedman referred these consolidated cases to me for settlement discussions.  See Order of Referral [#104] (available on the 00-1401 docket report only).  I presided over settlement conferences on August 15, 2006 and September 22, 2006 in my chambers.  On January 17, 2007, Judge Friedman referred the consolidated cases to me for management of all pre-trial matters, including for the purpose of issuing reports and recommendations on any dispositive motions filed in these cases.  See Referral Order [#112]. There was a pending motion to dismiss all of plaintiffs' claims.  I issued a report and

recommendation on the motion.  Judge Friedman issued an order on September 27, 2007,

granting the motion to dismiss regarding plaintiffs' third-party beneficiary claim, but denying the

motion on all other counts. Id.  I have continued to preside over pre-trial matters, including

numerous discovery disputes that have arisen between the parties.  Defendant now seeks my

recusal from deciding the merits of this action based on my presiding over the settlement

negotiations in the Pitney Bowes case and early in this case. Def. Mot. at 1.

## II. Legal Standard

Two statutes pertain to the possible recusal of a judge.  One, now codified as 28 U.S.C. §

144, speaks to a "personal bias or prejudice" and provides:

> Whenever a party to any proceeding in a district court makes and
> files a timely and sufficient affidavit that the judge before whom
> the matter is pending has a personal bias or prejudice either against
> him or in favor of any adverse party, such judge shall proceed no
> further therein, but another judge shall be assigned to hear such
> proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that
> bias or prejudice exists, and shall be filed not less than ten days
> before the beginning of the term at which the proceeding is to be
> heard, or good cause shall be shown for failure to file it within such
> time. A party may file only one such affidavit in any case. It shall
> be accompanied by a certificate of counsel of record stating that it
> is made in good faith.

28 U.S.C. § 144.

The filing of the affidavit specified in the statute is *sine qua non*. Brotherhood of

Locomotive Firemen & Enginemen v. Bangor & Aroostook R. Co., 380 F.2d 570, 576 (D.C. Cir.

1967), cert. denied, 389 U.S. 327 (1967); United States v. Sammons, 918 F.2d 592, 598 (6th Cir.

1990).  Since no affidavit was filed, this statute does not apply, and there is no impediment to my

considering the defendant's motion.

The only other applicable statute, therefore, is 28 U.S.C. § 455, which requires a judge to disqualify himself when, *inter alia*, (a) his impartiality might reasonably be questioned; (b) he has a personal bias or prejudice concerning a party; or (c) he has personal knowledge of disputed evidentiary facts concerning the proceeding.[3]  See 28 U.S.C. § 455 (b)(1).  First, however, the motion must be timely made.

## A.  Timeliness

While "section 455(a) contains no express timeliness provision, most circuits considering the matter have concluded that a litigant must raise the disqualification issue within a reasonable time after the grounds for it are known." United States v. Barrett, 111 F.3d 947, 951-52 (D.C. Cir. 1997) (citing  In re Kansas Pub. Emps. Ret. Sys., 85 F.3d 1353, 1360 (8th Cir. 1996) ("We have held in the past that even though § 455 has no express timeliness requirements, claims under § 455 will not be considered unless timely made.") (citations omitted); United States v. Brinkworth, 68 F.3d 633, 639 (2d Cir. 1995) ("Although § 455 does not specify a time limit for application, a timeliness provision has been judicially implied.  A party must bring a disqualification motion 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'") (internal quotations and citations omitted); E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1295 (9th Cir. 1992) ("It is well established in this circuit that a recusal motion must be made in a timely fashion . . . While there is no per se rule that recusal motions must be made at a fixed point in order to be timely, such motions

---

[3] There are other grounds for recusal in the statute (prior appearance as counsel or a disqualifying financial interest), but they are not relevant here.

5

'should be filed with reasonable promptness after the ground for such a motion is ascertained.'")

(citations omitted); United States v. Owens, 902 F.2d 1154, 1156 (4th Cir. 1990) ("Timeliness is

an essential element of a recusal motion . . .  It is judicially implied in § 455."); United States v.

Slay, 714 F.2d 1093, 1094 (11th Cir. 1983) ("A motion to disqualify a magistrate under § 455(a)

must be timely.") (citations omitted), cert. denied, 464 U.S. 1050 (1984); Delesdernier v.

Porterie, 666 F.2d 116, 121-22 (5th Cir. 1982), (concluding that "timeliness may not be

disregarded in all cases regarding disqualification under § 455(a)" and that "the facts of the

present case are well suited to a timeliness requirement"), cert. denied, 459 U.S. 839 (1982)).

As just explained, defendant seeks my recusal from deciding the merits of the case, based

on my participation in settlement discussions for both the instant case and the Pitney Bowes case.

Defendant, however, has waited over three and a half years since the case was referred to me for

pre-trial management to raise this issue.  Judge Friedman's referral order was clear that I would

decide dispositive motions by report and recommendation.  See Referral Order [#112].  The

referral order came within months of my presiding over settlement discussions in this case, but

defendant did not raise any concerns at that time.  In fact, I went on to make a report and

recommendation to Judge Friedman on defendant's motion to dismiss, without any objections

made by defendant that I should recuse myself from doing so based on my participation in

settlement discussions.  In light of this and every other Circuit's insistence that such a motion be

made promptly after the supposedly disqualifying facts are known, defendant's motion first fails

for not even coming close to that requirement.

**B.  Recusal Based on Lack of Objectivity because I Presided Over Settlement Discussions**.

The Court of Appeals for the District of Columbia Circuit has applied an "objective"

standard for reviewing a recusal sought under 28 U.S.C. § 455, indicating that "[r]ecusal is required when a reasonable and informed observer would question the judge's impartiality." <u>SEC v. Loving Spirit Found.</u>, 392 F.3d 486, 493 (D.C. Cir. 2004) (internal citations omitted).

The first question presented is whether a reasonable and informed observer would question my impartiality because I presided over the Pitney Bowes settlement discussions, which resulted in a settlement, and the settlement discussions in this case, which did not.

Defendant does not protest that its representatives said or did something during those discussions that I will construe or use against it.[4]  It has not filed, for example, a submission *in camera* indicating what it said or did that supposedly had such a profound influence on me that a reasonable person would say that it would be impossible to me to be objective.  In this case, that would be pure fantasy.  It does not breach the confidentiality of those discussions to tell the parties what they already know.  Not much happened during those discussions, and there was surely nothing said during them or to me in private sessions that would make it impossible for me to be objective.  To the contrary, they were the kind of discussions I discussed in my decision in <u>Black v. Kendig</u>, 227 F. Supp. 2d 153, 155 (D.D.C. 2002).  We had what I call "the traditional parade of the bull elephants," in which each side trumpeted that it was going to win hands down, and told me that settlement was impossible.  We then went on to other things.  To throw me off this case, after all these years and my familiarity with the case and the legal issues, is truly to cut one's throat on a good rug.

Defendant's absolute rule that a magistrate judge must be recused whenever she presides

---

[4] At my age, I am flattered that the defendant thinks my memory so good; the Pitney Bowes case settlement occurred about *ten years ago*.

over settlement discussions also ignores the long tradition in this Court that is to the precise contrary.  The magistrate judges in this Court are often called upon to try a case after they have presided over settlement discussions.

Defendant asserts that Local Civil Rule 84.9 prohibits a magistrate judge who has participated in prior mediation or settlement discussions from deciding the merits of a case, based on her participation in those discussions.  Instead, Rule 84.9 is a rule regarding confidentiality in the mediation program that is administered by the Circuit Court.  It does not say a word about magistrate judges, let alone purport to disqualify them from trying a case when a District Court judge, independent of the Circuit Court's mediation program, refers settlement discussions to magistrate judges who thereafter try the case.

Simply put, there is no authority anywhere that could support the assertion that magistrate judges must recuse themselves from cases they have tried to settle unsuccessfully merely because they have presided over settlement conferences.  No reasonably well-informed observer could possibly reach the conclusion that magistrate judges can never be fair and impartial in trying a case because they presided over settlement discussions, particularly when there is not even a pretense that a party said any thing during those discussions that could possibly affect the magistrate judge's judgment.

### C.  Bias Based on Bias or Personal Knowledge

As explained, a judge must also disqualify himself "where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).  The Court of Appeals has found that only personal knowledge of disputed facts gained in an extrajudicial capacity is grounds for recusal.  <u>See</u>

United States v. Pollard, 959 F.2d 1011, 1031 (D.C. Cir. 1992) (internal citations omitted).

Thus, knowledge gained from direct participation in the case is not grounds for recusal. Id.; see also Black, 227 F. Supp. 2d at 155.  Thus, the knowledge the judge gained from presiding over settlement discussions does not *require* the recusal of a judge who then presides over the case for trial.  Black, 227 F. Supp. 2d at 155 (citing Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir. 1986); Bilello v. Abbott Lab., 825 F. Supp. 475, 478-79 (E.D.N.Y. 1993); Geneva Assurance Syndicate, Inc. v. Med. Emergency Serv. Assoc., 92-CIV-1652, 1993 WL 384566, at *3 (N.D. Ill. Sept. 28, 1993); United States v. Conservation Chem. Co., 106 F.R.D. 210, 234-35 (W.D. Mo. 1985)).

If that is true when a judge gains knowledge from presiding over settlement discussions, then *a fortiori*, it must be true when, as here, a judge presides over settlement discussions and learns nothing he did not already know.

Finally, the "courts have developed rules and presumptions that enable the most efficient use of limited judicial resources while at the same time protecting the various parties' rights to have their claims and arguments heard and decided by an impartial decision-maker." Clifford v. United States, 136 F.3d 144, 149 (D.C. Cir. 1998).  "[A] judge may have personal experience with particular parties who have appeared before her in previous cases, or she may have learned about underlying events by presiding over related trials." United States v. Cowden, 545 F.2d 257, 265-66 (1st Cir. 1976), cert. denied, 430 U.S. 909 (1977).  The court of appeals has found that such prior knowledge does not, in itself, raise questions about the fairness of a judge,[5] because a

---

[5] See Clifford, 136 F.3d at 148-149 (citing Liteky v. United States, 510 U.S. 540, 550-51, 555 (1994); United States v. Roach, 108 F.3d 1477, 1484 (D.C. Cir. 1997), cert. denied, 522 U.S. 983 (1997); Paradis v. Arave, 20 F.3d 950, 956-57 (9th Cir. 1994), cert. denied, 513 U.S. 1117

judge is expected "to compartmentalize the information they receive and only rely on evidence relevant for a particular decision." Clifford, 136 F.3d at 149 (citing Harris v. Rivera, 454 U.S. 339, 346 (1981); United States v. Menk, 406 F.2d 124, 126-27 (7th Cir. 1968), cert. denied, 395 U.S. 946 (1969); In re M.D.J., 346 A.2d 733, 736 (D.C. 1975)).  Such prior knowledge does not, by itself, generally raise questions about the fairness of a judge.  I must recuse myself where such knowledge rises to the level where it creates the appearance of bias or prejudice; however, that is not objectively so in this case.  While defendant points to statements I have made in court, such as "I'm very familiar with this case, and I'm familiar with it because of my work on the [Pitney Bowes] case," as evidence of my impartiality, they do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555.  No partiality exists, and no reasonable person could doubt my impartiality.  Further, although the standard is objective, as I have already pointed out, I can honestly say that I have no recollection of any statement ever made by defendant, whether in the Pitney Bowes settlement discussions, the settlement discussions in this case, or at any other time, that was or could be construed as a concession of liability, or that would or could be used by me against the defendant in my further work in this case.

Finally, let me put to rest a bit of silliness that has recently emerged.  During the most recent status conference, I expressed the view that a trial was unlikely because there was no real dispute that the USPS had issued the regulations it did, which had the consequences about which plaintiff complained. Transcript of March 24, 2010 [#213] [1:00-CIV-01401-PLF-JMF docket only] at 4.  I also indicated that once the dispositive motions were resolved, there would have to

(1995)).

be an evidentiary hearing on damages. Id. at 8.

A representative of Ascom, who was in court, wrote a letter to the USPS expressing his view that my statements indicated that I did not agree with USPS that there was no legal basis for plaintiffs' claim. Plaintiffs' Opposition to Defendant's Motion to Recuse Magistrate Judge, Exhibit 1.  According to defendant, this letter "demonstrates that not even Plaintiffs perceive the Magistrate Judge as an impartial adjudicator." Id. at 9-10.

First, I am not responsible for how other people construe what I say.  Second, the defendant forgets that its counsel agreed with the utterly innocuous things I said, that no one is contesting that the USPS issued the regulation it issued, and that, if plaintiffs' case survives the defendant's motion for summary judgment, the next phase of the case will be a hearing on damages.  See Transcript at 9.  Defendant cannot be seriously suggesting that either statement establishes that I have a disqualifying bias against it that is premised on some extrajudicial source of information.

### IV. Conclusion

For the reasons stated herein, defendant's motion for my recusal will be denied.  A separate Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE