**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| ASCOM HASLER MAILING | ) |
| SYSTEMS, INC. | ) |
|  | ) |
| Plaintiff, | ) Civil Action No. 00cv1401 (PLF/JMF) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES POSTAL SERVICE | ) |
| Defendant. | ) |
| _____ | ) |
|  | ) |
| NEOPOST, INC. | ) |
|  | ) Civil Action No. 00cv2089 (PLF/JMF) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES POSTAL SERVICE | ) |
| Defendant. | ) |
| _____ | ) |

## <u>DECLARATION OF G. WILLIAM KENNEDY, Ph.D., CPA/ABV</u>

I, G. William Kennedy, Ph.D., CPA/ABV depose and state as follows:

1.  I am a Managing Director with FTI Consulting, Inc., a global business advisory firm. I work in the FTI Boston office in the firm's Forensic and Litigation Services practice. I have a Bachelor's degree and Master's degree in accounting from the University of Illinois and a Ph.D. in Finance from Saint Louis University.

2.  I am a Certified Public Accountant and a member of the American Institute of Certified Public Accountants (AICPA), the national professional organization for practicing CPAs. I am also a member of the AICPA Forensic and Valuation Services Section. I hold the designation Accredited in Business Valuation (ABV) granted by the American Institute of Certified Public Accountants to CPA members who demonstrate experience in the business valuation profession and pass a rigorous written examination administered by the AICPA.

3. I have over thirty years of professional experience working with two of the Big 4 CPA firms, serving in corporate management positions, holding various academic positions including the rank of Associate Professor of Finance (with tenure), and prior to joining FTI Consulting I was a partner in a Midwest regional CPA firm for five years. For the past fifteen years I have been active in the practice of business valuation and litigation support services. I have testified in State and Federal courts as an expert witness on various matters related to valuation, economic damages and lost profits, and accountants professional liability.

4. I frequently present CPA continuing professional education seminars on technical valuation related topics, and on statistical applications used in business valuation and litigation engagements at AICPA National conferences, State CPA Society conferences, and AICPA webinars. In addition to my teaching and continuing professional educational seminar presentations, I regularly attend AICPA national conferences on business valuation and forensic accounting services.

5. I have been recognized by my professional peer group for my work in the business valuation profession by being inducted into the AICPA Business Valuation Hall of Fame, which has granted that recognition to fewer than thirty individuals.

6. I serve on the Editorial Review Board of the *Business Valuation Review*, published by the American Society of Appraisers (ASA) of which I am a member. I also serve on the Editorial Advisory Board for the *Journal of Accountancy*, published by the AICPA.

7. I hold leadership positions in my profession. I am Chairman of the AICPA's ABV Credential Committee, and former Chairman of the AICPA's Business Valuation Examination Committee,

the committee of business valuation experts responsible for preparation of the ABV examination for the AICPA. I also served on the AICPA's Mergers and Acquisitions ("M&A") Dispute Resolution Taskforce which has developed a Practice Aid for CPA's who practice in the area of M&A disputes. I have also served on the AICPA Business Valuation Committee, the committee responsible for establishing all policies and developing supporting programs for all AICPA member CPAs who perform valuation services.

8.  My career as a practicing CPA and corporate financial officer, I became familiar with requirements and common practices of U.S. corporations to create, maintain, and retain detailed accounting records and books of original entry that support the preparation of a corporation's financial statements and corporate tax returns. Those detailed accounting records would include, but not be limited to, cash receipts and disbursement records, general ledgers, trial balances, journal entries and account analysis and other documents supporting those journal entries, detailed capital spending and fixed asset acquisition and disposal records, asset cost ledgers, and depreciation and amortization schedules.

9.  In preparing this Declaration I have reviewed the Complaints filed in this case, the Defendant's discovery requests, the Plaintiffs document productions in response to the Defendant's requests, and the expert report prepared by Bruce Abrahams and supplemental expert report by Bruce Abrahams and all supporting documentation, and Parties Joint Report to the Court dated February 2, 2012 (ECF No. 134).

10.  Plaintiff Neopost states in its complaint that, "the Postal Service has wrongfully diverted to itself substantial funds intended to compensate Neopost for **development, implementation, maintenance, promotion, operation, and improvement of Neopost's computerized meter**

**resetting system** ("CRMS"), known as Postage on Call."[1] Neopost further emphasized in its complaint that "…Neopost's **compensation for developing, implementing, maintaining, promoting, operating, and improving its CMRS services** would consist, in part, of an agreement with its CMRS customers permitting Neopost to retain the interest income on such customer required advance deposits for the remote resetting service."[2] (Emphasis added)

11. Plaintiff Ascom states in its complaint claims comparable to Neopost, that "This revenue stream was intended to compensate Ascom for its **development, maintenance, and operation of its CMRS.**"[3] (Emphasis added)

12. In response to the Defendant's document requests, Plaintiff Neopost produced audited financial statements for the years 1993 – 2000, which were prepared in accordance with U.S. Generally Accepted Accounting Principles ("GAAP"). Plaintiff Ascom produced annual financial statements for the years 1994 – 1998 and the eleven months ended November 30, 1999. These financial statements are aggregations of both Companies' revenues, expenses, assets and liabilities and do not provide the necessary level of detail necessary to make any determination as to the specific amounts of the Plaintiffs costs and expenditures specifically attributable to their respective CMRS systems.

13. In order to properly and fully evaluate Plaintiffs' claim for damages it would be necessary to analyze the Plaintiffs' detailed accounting records, including books of original entry and account analysis, to make a determination as to the amounts of expenditures specifically made for each of the different categories of development, implementation, maintenance, promotion, operation, and improvement costs associated with their CMRS systems that the Plaintiffs claims were to be

---

[1] Neopost Complaint, paragraph 1.
[2] Ibid, paragraphs 3, 20., 51, 55, and 78.
[3] Ascom Complaint, paragraphs 1, 20, 58, 61, and 81.

compensated. Additionally, it would be necessary to analyze the Plaintiffs tax returns, including the depreciation schedules and any trust bank records reflecting interest income earned.

14. In order to publish annual or audited financial statements and file U.S. corporate income tax returns, the Plaintiffs would have had to create and maintain detailed accounting records and books of original entry such as general ledgers, cash receipts records, and cash disbursement records, and fixed asset cost and depreciation and amortization records. These are the typical type of records a corporation would produce and maintain in the ordinary course of business.

15. The specific types of accounting records, which were requested, that would be necessary to properly examine and fully evaluate Plaintiffs' claim for damages and which were not produced by Plaintiffs would include:

   a. Cash disbursement records and general ledger accounts, detailed accounting records or account analysis which were used to accumulate the costs and expenditures made for each of the six identified categories of expenditures specific to the CMRS system (developing, implementing, maintaining, promoting, operating, and improving the CMRS services), which would have been contained in and extractable from the Companies general ledgers. These documents would have contained actual dollar values of funds spent for the development, maintenance, and operations of the Plaintiffs CMRS systems. These documents would have been responsive to Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35;

   b. Any general ledger account analysis prepared by the companies' accounting staff, internal or external auditors for each of the six identified categories of expenditures specific to the CMRS system. These documents would have contained actual dollar values of funds spent for the development, maintenance, and operations of the Plaintiffs CMRS systems. These documents would have been responsive to Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35;

   c. Supporting schedules or memorandum prepared for any adjusting entries proposed for or posted to the accounts in the general ledger used to accumulate each of the six identified categories of expenditures specific to the CMRS system. These documents would contain dollar values of any adjustments made to the development, maintenance and operations of the Plaintiffs' CMRS systems over time. These documents would have been responsive to Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35;

   d. Detailed property, plant and equipment records and accompanying asset depreciation schedules providing information as to the capitalized expenditures and associated

depreciation or amortization and disposals made specifically related to any of the six identified categories of expenditures specific to the CMRS system. These documents would contain the dollar values of the depreciation and amortization of development/capitalized CMRS costs which would allow calculation of the corresponding reduction in the Plaintiffs' taxable income and income tax expense as an alternative means of recovering their expenditures for their CMRS systems other than using corporate or interest funds. These documents would have been responsive to Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35;

e.  Detailed accounting records, or account analysis supporting the accumulation (expensing or capitalization and amortization) of specific research and development costs associated with each of the six identified categories of expenditures specific to the CMRS system. These documents would have contained actual dollar values of funds spent for the development, maintenance, and operations of the Plaintiffs CMRS systems. These documents would have been responsive to Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35;

f.  Detailed accounting records, or account analysis supporting the recording of interest income earned on such customer required advance deposits and the specific dates, timing, and amounts of the withdrawal and application of the interest income to the costs associated with each of the six identified categories of expenditures specific to the CMRS system. Although the Plaintiffs' summary financial statements contained interest income amounts, those financial statements did not differentiate the amount of interest incomes derived from trust fund deposits and interest income derived from other sources. Furthermore, the Plaintiffs summary financial statements provide no information regarding the timing of receipt and use of the interest income and therefore we were not able from those records to determine the amount of interest income the Plaintiffs earned from the trust fund deposits and if those funds were applied to their CMRS system costs. (Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35);

g.  Detailed accounting records or account analysis supporting the capitalization and tax depreciation and amortization or expensing of research and development expenditures specific to the CMRS system. These documents would have contained actual dollar values of funds spent for the development, maintenance, and operations of the Plaintiffs CMRS systems.  (Defendant's Document Requests 1, 2, 4, 10, 14, 15, 17, 31, 32, 34, and 35);

16. The Plaintiffs should have retained their detailed accounting records in the ordinary course of business.  Specifically, the Plaintiffs would be required under the Internal Revenue Code and IRS Revenue Procedures to retain those business and accounting records for a sufficient period of time (at least three years) after filing their income tax return with the IRS to allow for their examination by the IRS. Moreover, it is recommended that key accounting records (i.e., cash

receipt and cash disbursement records and general ledgers) be retained permanently[4]. For example, the documents reflecting the Plaintiffs actual dollar values of funds spent in the development, maintenance, and operation of their CMRS systems should still be in existence and be available today. Additionally the records reflecting the capitalization and depreciation or amortization of their development costs would have been available for the time period the depreciation and amortization was reported on their tax returns plus at least three years thereafter.

17.   The financial information provided by the Plaintiffs, including their annual financial statements, which are aggregations of the Companies' revenues, expenses, assets and liabilities, do not provide the level of detail necessary for the Defendant to make any determination as to the amounts of the Plaintiffs costs and expenditures specifically attributable to their respective CMRS systems. The financial documents provided by the Plaintiffs provide no information that would allow the Defendant to determine the costs incurred by the Plaintiffs to develop and maintain their CMRS systems nor do they provide information that would allow the Defendant to make an informed determination regarding the application and use of trust fund interest income and/or income tax depreciation and amortization to support the Plaintiffs development and maintenance of their CMRS systems. The Plaintiffs would have created the necessary detailed accounting records in the ordinary course of business that would allow the Defendants to make the assessment and analysis of the Plaintiffs damages claims but those records were not provided to the Defendant for its review and analysis.

---

[4] The Record Retention Guide, prepared by The Massachusetts Society of Certified Public Accountants, Federal Taxation Committee. P. 3, 2004.

I do solemnly declare and affirm under penalty of perjury that the statements of the foregoing document are true and correct to the best of my knowledge, information and belief.

Dated: ____February 21, 2012_____

_____

G. WILLIAM KENNEDY, Ph.D., CPA/ABV